THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* JOHN S. ROBERTS AND JAMES F. REED, SURVIVORS OF JAMES ADAMS.

By the ninth section of the act of Congress passed in 1836 (5 Stat. at Large, 81), it was enacted that the Postmaster-General was authorized to give instructions to postmasters for accounting and disbursing the public money.

In 1838, the Postmaster-General gave instructions to all postmasters, that, where they paid money to contractors for carrying the mail, duplicate receipts were to be taken in the form prescribed, one of which the postmaster was to keep, and the other was directed to be sent by the next mail to the Auditor for the Post-Office Department.

Where a payment was made to a contractor by the surety of a postmaster in his behalf, and no duplicate receipt forwarded to the Post-Office Department, nor any information thereof given to the Department until after a final settlement of the accounts of the contractor had been made, in which settlement the contractor was not charged with the amount of such payment, it was error in the Circuit Court to instruct the jury that they might allow a credit for it to the surety when sued upon his bond, provided they believed from the testimony that the contractor had not received more money than he was entitled to.

By an act passed on the 3d of March, 1825 (4 Stat. at Large, 112), Congress declared that if any postmaster shall neglect to render his account for one month after the time, and in the form and manner, prescribed by law, and by the Postmaster-General's instructions conformable therewith, he shall forfeit double the value of the postages which shall have arisen at the same office in any equal portion of time, previous or subsequent thereto; or in case no account shall have been rendered at the time of the trial of such case, then such sum as the court and jury shall estimate as equivalent thereto.

Where, at the time of the trial of a suit by the United States against a postmaster and his surety, there was no return for an entire quarter and a fraction of the ensuing quarter, the proper mode of computing damages was to go back to a quarter for which there was a return, calculate from it the amount due for the deficient quarter and deficient fraction taken together, and then double the sum arrived at by this calculation.

The fraction is included, because the obligation to make a return is as binding upon

a postmaster who leaves office in the middle of a quarter, as if he remained in office until the end of the quarter.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Illinois.

It was an action of debt, brought by the United States in the Circuit Court, on an official bond against John S. Roberts, who had been postmaster at Springfield, Illinois, and James F. Reed and James Adams, his sureties.

The facts in the case were these.

On the 3d of March, 1825, Congress passed an act (4 Stat. at Large, 112), the thirty-second section of which enacted as follows, viz. : —

"That if any postmaster shall neglect to render his accounts for one month after the time, and in the form and manner, prescribed by law, and by the Postmaster-General's instructions conformable therewith, he shall forfeit double the value of the postages which shall have arisen at the same office in any equal portion of time, previous or subsequent thereto ; or in case no account shall have been rendered at the time of trial of such case, then, such sum as the court and jury shall estimate as equivalent thereto, to be recovered by the Postmaster-General, in an action of debt on the bond against the postmaster and his securities, and for which the securities shall be liable." This was no new provision, being substantially a reënactment of the thirtieth section of the Post-Office Act of 1810. 2 Statutes at Large, 602.

In 1836 Congress passed another act (5 Stat. at Large, 81), the ninth section of which gave to the Postmaster-General authority to prescribe regulations for the proper enforcement of the duties of postmasters.

Under this authority, Amos Kendall, then Postmaster-General, issued the following circular.

*Letter.*

"*Post-Office Department, April* 13, 1838.

" To

Postmaster at Springfield, Ill.

" Sir, — You are required, within two days after the close of each quarter, to forward your quarterly accounts to this Department ; or, if there be no mail from your office within that time, then by the next mail. The quarters end on the 31st March, 30th June, 30th September, and 31st December.

" By having your accounts of mails sent, and mails received,

The United States *v.* Roberts et al.

copied beforehand, up to the last day, you can finish the copies, make the calculations, and have them ready to be forwarded, in a few hours.

"As you have no right to use or credit out the money which belongs to the United States, it is required that you have the balance due at the end of each quarter ready to be paid on demand.

"The contractor named at the foot of this letter, who carries the mail on the route there stated, on which your office is situated, is authorized to demand and receive of you, either in person or by his agent, at the end of each quarter, so long as he shall actually carry the mail on said route, or until you shall be otherwise directed, the whole amount due from you to the United States, including the quarter then just terminated, as shown in your account current.

"Blank forms of orders and receipts (specimens of which, filled up, are hereto annexed) will be sent, for every collection, to the contractor. These forms, and no others, must be used in your payments to contractors. If the contractor call on you in person for the money, the orders will not be necessary, and you will take from him two receipts in the form prescribed, one of which you will keep, and send the other by the next mail to the Auditor for the Post-Office Department. If any other person call for the money as agent, he must produce to you two orders in the prescribed form, signed by the contractor, with the blank receipts annexed; and after you have paid him, he will fill up and sign both receipts, and leave both orders and both receipts with you; one of each you will forthwith send to the Auditor for the Post-Office Department, and retain the other.

"These claims and orders cannot be sold, negotiated, or transferred, and no credit will be allowed you for any payment to any other person than the contractor, or the persons named in his orders; nor in the latter case will credit be allowed, unless the order accompany the receipt; nor unless the receipt be dated on the day when the money is paid.

"When demand is made of you as herein prescribed, it is expected that you will make instant payment, and the contractor is instructed to report forthwith to the Department every refusal or failure on your part.

"Very respectfully, your obedient servant,
"AMOS KENDALL.

"Pay to Robert Allen,
Contractor on route No. 2,701.

" ☞ You will take care to write or stamp the name of your office on the outside of the packet containing your quarterly returns for each quarter.

" *Auditor's Office, P. O. Dep.*"

Annexed to this letter were blank forms, which the postmaster was directed to follow.

There was also issued the following circular to contractors for carrying the mail.

" *Post-Office Department,*    .    183

" To

Contractor on Mail Route No.

" The postmaster at'                          [and] are instructed to pay over to you, or your order, on demand, at the end of each quarter, so long as you shall actually carry the mail on said route, or until they shall be otherwise directed, the whole amount due from them to the Department, for the quarter then just terminated, as shown by their several accounts current.

" You are requested to make demand as soon as possible after the first day of the next quarter, and report to the Department every failure or refusal to pay, with the reasons therefor, whether given by the postmasters, or otherwise known to you.

" When you have received the balances due from all these postmasters, or as many of them as can be collected, you will fill up, sign, and send to the Department the blank ' acknowledgment ' sent to you, of which a specimen is annexed, showing the name of each postmaster, the name of his office, and the amount received from him, upon receipt of which a draft will be forwarded for any amount which may still be due to you ; provided that, in case you fail to collect any one of said balances, no part of the balance due will be paid you until the Department shall be satisfied that you have used due diligence to effect the collection, and that it could not be done.

" Herewith you will also receive the proper number of orders and receipts, in blank, for collections on the above route ; that is, an original and duplicate for each office, which you are required to use in all your collections from the postmasters. Similar blanks will be forwarded for each successive quarter. You will collect at the end of each quarter from those offices only which are named in the blanks sent to you for that quarter. If you apply for the money in person, the orders will be unnecessary, and you will fill up and hand to each postmaster from whom you may receive payment the original and dupli-

cate receipts, sent to you for his office, — one for his own use, the other to be sent to the Department. If you send any other person to call for the money at an office, you will fill up in his favor, and give him the two orders (original and duplicate) sent to you for that office, with the blank receipts annexed; and when he has received the money, he will fill up and sign the annexed receipts, and leave both orders and both receipts with the postmaster.

" You are not authorized to sell, negotiate, or transfer any of these claims, and no payment will be recognized by the Department unless made directly to you, or to the person named in your orders.

" Every order and every receipt must bear the true date of its signature, in default of which it will not be considered a good voucher at the Department.

" Very respectfully, your obedient servant."

Annexed to this letter also were blanks, and copies were sent to the postmasters.

On the 9th of July, 1840, John S. Roberts, being reappointed postmaster at Springfield, executed a bond to the United States, with James Adams and James F. Reed as sureties, in the penal sum of five thousand dollars, with the condition that he should well and truly execute the duties of the said office according to law and the instructions of the Postmaster-General, &c., &c.

The contractor for carrying the mail on route No. 2,701, from Springfield in Illinois to Terre Haute in Indiana, was Robert Allen.

It appeared from the testimony of Thomas A. Scott, a clerk in the office of the Auditor of the Treasury for the Post-Office Department, that for the third quarter of 1840, Allen, the contractor, transmitted an acknowledgment for collection made on route No. 2,701 ; that, in this acknowledgment, the said Allen acknowledged no sum as received from said Roberts, and that, no receipt having been received from said Roberts, no charge was made on account of any such collection against said Allen for said quarter, nor was any credit given to said Roberts ; but that deponent, considering that said Roberts was in default in respect to said quarter by not paying over his quarterly dues to the said contractor according to his duty under his standing instructions, and upon the printed receipts sent to the contractor for that purpose, regarded it as his duty to report said default for the information of the Postmaster-General, and did accordingly make such report on the 14th of November, 1840.

" And deponent further saith, that, for the fourth quarter of

1840, the said Allen transmitted an acknowledgment for collecting on said route No. 2,701 ; that, in this acknowledgment, said Allen having reported no sum as collected from said postmaster, and the said Roberts having forwarded no receipt, no debit to the contractor, or credit to the postmaster, in like manner, was given for said fourth quarter of 1840.

"And deponent further saith, that, for the first quarter of 1841, the said Allen transmitted an acknowledgment of collections on said route No. 2,701, a copy of which is hereto annexed, marked I, and made part of this deposition ; that, in this acknowledgment, the said Allen acknowledged himself to have received the sum of $733.28 from J. W. Keys, the successor of said Roberts, for the part of said quarter said Keys was in office, but acknowledged no sum as received from said Roberts, and that neither did the said Roberts transmit any receipt of said Allen for said first quarter, nor for any part thereof, during which he remained in office."

It should be mentioned that, for the second quarter of 1840, Allen, the contractor, transmitted an account to the Department, in which he took no notice of a payment of $956.87, which had been made to him by the postmaster at Springfield; but, the postmaster having transmitted Allen's receipt in proper form for that amount, Allen was charged and the postmaster credited with that amount.

In January, 1841, Allen alleged that he gave a receipt to James Adams, one of the sureties, for $1,731.39, which Adams had paid to him at various times, and in various amounts. The receipt was without date, and as follows : —

"Received of John S. Roberts, Postmaster at Springfield, Ill., (per Gen. James Adams, one of his sureties,) seventeen hundred and thirty-one dollars $\frac{39}{100}$ of the amount due up to the 1st of January, 1841, to the Post-Office Department.

"ROBERT ALLEN."

This receipt, however, was not transmitted to the Post-Office Department until 1843, as appears from the following deposition by P. G. Washington, then Auditor of the Treasury for the Post-Office Department.

"And deponent further saith, that whilst holding the office of chief clerk, to wit, about the 1st of March, 1843, a letter was received at the Auditor's office, and referred to deponent, according to the usual course of business, from J. Butterfield, Esq., then District Attorney, dated 19th February, 1843, and inclosing a copy of an affidavit made by said Robert Allen in this cause, and a copy of a receipt given by him to James Ad-

ams, one of the sureties of said J. S. Roberts, for the sum of $1,731.39, the said affidavit setting forth that said Allen drew for and received said amount at different times, and informed the Post-Office Department thereof by letter ; and about the same time deponent had referred to him another copy of said affidavit and receipt, with a copy attached of an affidavit alleged to have been made also in this cause by the said J. S. Roberts, setting forth, among other things, that said Roberts had large items of set-off, which had been forwarded to the Post-Office Department, and been disallowed. And deponent then made an affidavit to rebut said affidavits, and with the same object procured affidavits to be made by said Elisha Whittlesey and said Thomas A. Scott, and having, on said occasion, fully examined the whole subject, became well satisfied, as he now is, that unless the said sum of $1,731.39, drawn for and received at different times, was composed of sums which were afterwards, to wit, at the end of the quarter, merged in and covered by the sums for which the said Allen gave the proper receipts, and which he properly reported in his acknowledgments for such quarter, the said sum of $1,731.39, as a separate and specific payment, never came to the knowledge of the Department, and was never charged to him, over and above the sums regularly reported, and at the same time charged to him, and credited to the said J. S. Roberts.

" And deponent further saith, that from the time a statement of the account of said Roberts was sent, as before stated, to wit, on the 29th January, 1842, for the information of the parties liable to the present, he, deponent, has had no knowledge whatever of any exceptions taken to said account, nor of any items of set-off on the part of said Roberts, except the pretended set-off founded upon the receipt of said Allen, which came first to the knowledge of deponent at the time and in the manner before stated, and long after the final payment was made to said Allen in September, 1842, for the balance due him for carrying the mails, as before stated.

" And deponent further saith, that the original receipt of said Allen for $1,731.39, before referred to, was also received at the Auditor's office in a letter signed by James Adams, for himself and J. F. Reed, and dated 14th January, 1843, but not, as deponent believes, before the copies were received, as before stated ; and that deponent returned the said original receipt to said Adams in a letter dated the 11th May, 1843, as appears by a memorandum made at the time on a copy of said receipt, which deponent prepared and retained."

On the 7th of February, 1841, Roberts went out of office.

In January, 1842, a copy of Roberts's account was transmitted to J. W. Keys, postmaster at Springfield, with instructions to present said account to the sureties of Roberts, and to inform them that a draft would be issued for the amount. The account was as follows, the first item being a balance due on the 9th of July, 1840, Roberts having been postmaster previous to that day.

" <i>Account.</i>

To balance,.　　．　　．　　．　　．　　．　　．　$ 372.58
To account from July 9 to Sept. 30, 1840,　．　．　921.40
To balance on postages estimated to have arisen at
　his office, from Oct. 1, 1840, to Feb. 7, 1841, and
　doubled agreeably to the 32d section of the act
　approved 3d March, 1825, relating to the Post-
　Office Department,　．　　．　　．　　．　　．　2,852.72
　　　　　　　　　　　　　　　　　　　　　　$4,146.70

Interest from 7th February, 1841.

"I certify that the foregoing is a true statement of the account of J. S. Roberts, late postmaster at Springfield, Ill., as audited and adjusted at this office; that the said J. S. Roberts did not render, as postmaster, an account current, as he was required to do, for the period from Oct. 1, 1840, to Feb. 7, 1841, inclusive, within one month after the expiration of said period, or at any subsequent time, and that I have estimated the postages received in said period at $ 1,426.36, the basis of the estimate being the amount of postages received for the quarter next preceding, say from July 1 to Sept. 30, 1840, and the said sum of $ 1,426.36 bearing the proportion to $ 1,009.43 (the postages of said quarter) which 130 days do to 92 days (the number of days in said quarter); and that, having doubled the amount of said postages so estimated, agreeably to the thirty-second section of the act of 3d March, 1825, I have charged the same at $ 2,852.72.

"In testimony whereof, I have hereunto subscribed my name, and caused to be affixed my seal of office, at Washing-[SEAL.] ton, this 17th day of June, in the year 1842.

"Elisha Whittlesey,<br>
<i>Auditor of Treasury for Post-Office Dep't.</i>"

It will be perceived by the above account, that the Auditor adopted a rule which was one of the points contested in the case; that for the quarter ending on the 30th of September, 1840, the amount of postage received was $ 1,009.43; that having no actual return of the amount received after that day, he applied the rule of three to the case, and worked out the re-

sult by the following method. As 92 days (the quarter ending on September 30th) are to $1,009.43, so are 130 days (the time between September 30th and the 7th of February, 1841, when he went out of office) to the sum with which he was properly chargeable, viz. $1,426.36. According to the act of Congress referred to in the commencement of this statement, this sum was doubled. It will be seen by the bill of exceptions that the jury, under the charge given by the court, doubled only the sum of $1,009.43.

In June, 1842, Allen's contract for carrying the mail expired, and on the 9th of September, 1842, his account was reported for settlement to the Postmaster-General. It showed a balance due to Allen of $881.37, which was paid on the 13th of September; but in this account no notice was taken of the alleged receipt by him, from Roberts's surety, of the sum of $1,731.39, no such payment having been brought to the notice of the Department.

In December, 1842, suit was brought upon the bond by the United States, in the Circuit Court of the State of Illinois.

On the 14th of January, 1843, J. Adams, "for himself and James F. Reed," wrote a letter to the Post-Office Department, inclosing a copy of the receipt (above mentioned) for $1,731.39, signed by Allen, the contractor, and claimed credit for it in Roberts's account. This letter was received about the 1st of March.

On the 11th of May, 1843, this receipt was refused and returned, for the following reasons, viz. : —

"I further certify, that credit for said receipt was, and is, refused, for the reason that, by the ninth section of the act of 2d July, 1836, it is made the duty of the Postmaster-General to prescribe the manner in which postmasters shall pay over their balances; that the Postmaster-General, in performance of this duty, gave to Mr. Roberts certain printed instructions, constituting the only authority he had for paying over the money he had in his hands; and that the payment so alleged to have been made by Mr. Allen was in direct violation of said instructions, and an evasion of the object therein intended to be secured, — the said object being, by restricting such payments to the blanks sent from the Department for each quarter for that purpose, and by requiring the immediate transmission of one of said receipts when executed, to charge the contractor on account of the same quarter with the amount, and to pay him thereupon only the balance of pay remaining; that no such blanks were furnished for the payment in question; and that,

43 *

by using a manuscript receipt, not sanctioned by the instructions or practice of the Department, it remained in entire ignorance of any such payment, until the receipt was received from Mr. Adams, as before stated, and until the contracts of Mr. Allen had expired, and the full amount due him had been otherwise paid; and, finally, as the postmaster had no authority to make such payment, his surety, Mr. Adams, had none to make it for him.

"In testimony whereof, I have hereunto subscribed my name, and caused to be affixed my seal of office, at Washington, this 6th day of November, in the year 1845.

[SEAL.]

"P. G. WASHINGTON,
*Auditor of Treasury for Post-Office Dep't.*"

The defendants, at first, allowed judgment to go against them by default, but this was afterwards set aside, and they were allowed to plead. The death of the defendant Adams was afterwards suggested, and issue having been joined, the cause came on for trial in December, 1845, when the jury found the following verdict, viz. : —

"We, the jury, find for the plaintiffs, and assess their damages at the sum of fourteen hundred and eighty-five dollars and twenty-nine cents; and the jury presented the following statement, made by them by direction of court, showing the calculations and allowances by which their said verdict was made up, viz : — The jury allow the amount of $921.40, and for the quarter from October to December, estimated at $1,009.43 doubled, making   .    .    .    .    .    .    . $2,018.86
                                                                    921.40
                                                                   ─────────
                                                                    2,940.26
Deduct for receipt,    .    .    .    .    .    1,731.39
                                                                   ─────────
                                                                    1,208.87
Interest on    .    .    .    $921.40            276.42
                                        6                          ─────────
                                   ───────                         1,485.29
                                   55.2840
                                        5
                                   ───────
                                   276.4200

"*Judgment.*

"It is therefore ordered and adjudged, that the said plaintiffs do recover of and from the said defendants their debt in their

declaration mentioned, the sum of five thousand dollars, to be released and discharged upon the payment of fourteen hundred and eighty-five dollars and twenty-nine cents, the damages aforesaid, by the jury aforesaid assessed, as well as their costs and charges herein expended, and that they have execution therefor," &c.

In the course of the trial the following bill of exceptions was taken.

### Bill of Exceptions.

United States Circuit Court for the District of Illinois, December Term, A. D. 1845.

THE UNITED STATES OF AMERICA v. JOHN S. ROBERTS and JAMES F. REED, survivors of James Adams, deceased.

Be it remembered, that this cause came on to be tried on the 19th day of December, A. D. 1845, at the December term of the Circuit Court of the United States for the District of Illinois, the Hon. Nathaniel Pope presiding; and the said plaintiffs, to prove and maintain the issues on their part, first introduced in evidence the bond on which this suit was brought, a copy of which is attached to the declaration herein, and then introduced in evidence the following certified statement of the account of John S. Roberts, as postmaster at Springfield, Illinois, to wit. (Then followed the certified account, as it has been stated above.)

The plaintiffs, further to prove the issues on their part, then read in evidence the deposition of Robert B. Rust, as follows. (Rust was a clerk in the Post-Office Department, and deposed that no returns had been made by Roberts for the quarter ending 31st December, 1840, nor for that part of the succeeding quarter between 1st January and 7th February, 1841.)

It was then admitted that Roberts went out of office on the 7th of February, 1841, and the plaintiffs there rested their case.

The defendants then offered in evidence the circular letter of instructions from Amos Kendall, the Postmaster-General, which has been given above. This was objected to on the part of the United States, but the objection was waived in the argument of the cause in this court.

The defendants then offered in evidence the receipt given by Allen for $1,731.39, above stated, the introduction of which was objected to by the United States; but the court overruled the objection, and permitted the paper to be read to the jury, to which the plaintiffs excepted, on the ground that it did not appear that the claim of the defendants for the amount mentioned in said receipt had been presented to the Auditor of the

Treasury for the Post-Office Department for settlement, and disallowed by him, and because the payment receipted for was in violation of law, and contrary to the instructions of the Post-master-General.

The defendants then offered the certificate of P. G. Washington, Aud tor of the Treasury, disallowing the claim, which certificate is given above.

The defen lants then called Robert Allen, who executed the receipt, as a witness, and offered to prove by him the circumstances under which the said receipt was given. The plaintiffs, by their counsel, objected, first, to the competency of the said Allen as a witness in this suit, on the ground that he was interested in the result of this suit; and, secondly, because the said receipt was not given in the form prescribed by the Post-master-General in his instructions; and, thirdly, that it was not competent for the said defendants to explain the said receipt by parol testimony; the court overruled the said objections, and allowed the said witness to testify; to which decision of the court the said plaintiffs, by their counsel, excepted.

And the said Allen testified that he was a contractor for carrying the mail on route 2,701, at and before the date of the said receipt; that the money mentioned in the said receipt, before the execution thereof, had been paid to him by James Adams, one of the sureties of the said John S. Roberts, in several small payments, for which he had given him receipts; that afterwards, some time in the month of January, 1841, he took up the said receipts, and gave him the said receipt for $1,731.39; that he never reported the receipt of the said money to the Post-Office Department, but thinks that some time afterwards he advised said Department thereof by letter, but could not state at what time; that he ceased to be contractor for carrying the mail on the 30th of June, 1842; that in March, 1842, he received from the Postmaster-General a draft on the said J. S. Roberts for $1,600; that he presented the same to the said Roberts for payment, and could get nothing upon it, and returned the said draft to the Postmaster-General unpaid; that he did not recollect whether it was before or after the receipt of said draft that he advised the Post-Office Department of the reception of the money mentioned in said receipt for $1,731.39. Said Allen further stated, that the government was indebted to him, as contractor, five thousand dollars and upwards, and that he had repeatedly applied for his account unsuccessfully.

The said defendants then called James W. Keys, who testified that he succeeded the said Roberts, as postmaster at Springfield; that he took charge of the post-office at said place on

the 7th day of February, 1841. He was then asked by the defendants, if, after he came into office, he made. payments to Allen as contractor, and took receipts different from those prescribed by the Postmaster-General in the printed form ; which question was objected to by the said plaintiffs, first, for the reason that no usages of the Post-Office Department can be proved variant from the printed instructions of the Postmaster-General ; and, second, because no practices pursued by the said Keys, subsequent to the time Roberts went out of office, could affect the rights of the plaintiffs in this suit ; which objections were overruled by the court, and the witness allowed to answer the question ; to which decision the plaintiffs excepted.

The said witness then testified, that while in office he made several payments to Allen, as contractor, and took his receipts, but did not know if the said receipts varied from those prescribed by the printed instructions of the Postmaster-General ; that he always took duplicate receipts, and by the next mail forwarded one of them to the Auditor for the Post-Office. Department, and that they were passed to his credit ; that after he went out of office, on the 27th September, 1841, he paid to the said Allen, as contractor, six hundred dollars, and took from him a receipt (which he produced) in the words and figures following, to wit : —

"Rec'd, Sept. 27th, 1841, of James W. Keys, late P. Master at Springfield, Ills., six hundred and fifty dollars in part of the amt. due P. O. Dept. for the fractional quarter ending the 7th Sept., 1841.

" ROBERT ALLEN."

That he took a duplicate of the said receipt at the same time, and immediately forwarded it to the Auditor of the Post-Office Department, and that his account there was credited with the amount of the same.

The defendants then introduced Allen Tomlin as a witness, who testified that he was postmaster in Galena, in the State of Illinois, from 1839 to the 4th of March, 1841 ; the witness was then asked, if he had been in the habit of making payments, as postmaster, to mail contractors, and taking manuscript receipts for such payments,. which were passed to his credit at the Post-Office Department ; which question was objected to by the plaintiffs' counsel, on the ground that the rights of the said plaintiffs in this case could not be prejudiced by the acts or dealings of the said Tomlin ; which objection was overruled by. the court, and witness allowed to answer the question ; to which decision the plaintiffs, by their counsel, excepted.

The said witness then testified, that he had, in several instances, when postmaster at Galena, as aforesaid, made payments to mail contractors, and took their receipts in manuscript; that he could not state whether such receipts varied from the printed forms or not, but that he always took duplicate receipts, and immediately forwarded one to the Auditor for the Post-Office Department, and such receipts were there passed to his credit.

The said defendants then called George Welch as a witness, who testified that he was a clerk in the post-office at Springfield during the time the said Roberts held said office, and some time thereafter under his successor; that he thought the quarterly return of the said Roberts, as postmaster as aforesaid, for the quarter ending December 31, 1840, was made up and sent to the Post-Office Department. On cross-examination, the said witness stated that he had no distinct recollection of the said account for that quarter being made up or sent; that he could recollect no fact in relation to it; that when he said, on his direct examination, that he thought the accounts had been made up for that quarter and sent, he merely thought so, because it had been the usual practice to make up and send the accounts for each quarter.

The defendants here rested.

The plaintiffs then introduced and read in evidence the depositions of Thomas A. Scott and Peter G. Washington, showing the state of the accounts with the Department, the material part of which depositions has been given in the preceding part of this statement.

The plaintiffs, by their counsel, then requested the court to give to the jury the following instructions: —

I. If the jury believe from the evidence that the said John S. Roberts continued to hold and exercise the office of postmaster at Springfield, in the State of Illinois, from the date of the said bond, upon which this suit is brought, until the 7th day of February, 1841, and then went out of office, and that he neglected to render his accounts, as such postmaster as aforesaid, for the period from October 1, 1840, to February 7, 1841, inclusive, within one month after the time, and in the form and manner, prescribed by law, and by the Postmaster-General's instructions conformable therewith, or at any subsequent time, then the plaintiffs are entitled to recover double the value of the postages which arose at the same office in an equal portion of time previous thereto, amounting to the sum of $ 2,852.72, as certified by the Auditor of the Treasury for the Post-Office Department in his certified statement of the account of the said

John S. Roberts, as postmaster as aforesaid; which said instruction was refused to be given by the court.

II. If the jury shall believe from the evidence, that the said John S. Roberts held and exercised the said office for the time stated in said first instruction, and neglected to render his accounts for the period stated in said first instruction within one month after the expiration of the said period, or at any subsequent time, that then the plaintiffs are entitled to recover double the value of the postages, as certified by the said auditor to have arisen at said post-office for the preceding quarter, that is to say, from July 1st to September 30th, 1840 ; which said instruction was given by the court.

III. If the jury believe the facts are as set forth in the certificate of the said auditor to the statement of the said John S. Roberts's account, the said plaintiffs are entitled to recover the sum of $ 2,852.72 for double postages for the period that the said Roberts neglected to render his accounts, as stated in said certificate ; which said instruction was refused to be given by the court.

IV. If the jury believe from the evidence that the said Roberts neglected to render his accounts, as postmaster as aforesaid, as certified by the said auditor as aforesaid, then the said plaintiffs are entitled to recover the sum of $ 2,018.86, being double the amount of postages certified by the said auditor to have been received at the same office for the next preceding quarter, that is to say, from the 1st of July to September, 30, 1840 ; which said instruction was given by the court.

V. The defendants in this cause are not entitled to a credit for the amount of the receipt of $ 1,731.39, executed by Robert Allen, the money mentioned in said receipt having been paid without authority, and in violation of the instructions of the Postmaster-General ; which said instruction was refused to be given by the court.

VI. The said defendants are not entitled to a credit for the said receipt of the said Robert Allen, unless the said receipt, or the duplicate thereof, was sent by the next mail, or within a reasonable time after it was executed, to the Auditor of the Post-Office Department.

VII. If the said receipt, or the duplicate thereof, was not sent to the Auditor of the Post-Office Department until more than a year after its execution, and until after the statement and adjustment of the accounts of the said Robert Allen, as contractor, at the Post-Office Department, as annexed to the depositions of Thomas A. Scott and Peter G. Washington, the defendants are not entitled to a credit or allowance for the said sum of money mentioned in said receipt.

" Which said two last instructions were each refused to be given by the court ; but the court, in answer to the first four instructions asked for by plaintiffs, charged the jury, " that the officers of the Post-Office Department had no right to calculate, as they did, that, if three months produced a given sum, four months and seven days would produce so much ; that it was proper for the jury to charge the defendants with double the postage received during the quarter ending 30th September, 1840, and this for the quarter ending December 31, 1840 ; and, as the plaintiffs had furnished no datum for finding a verdict for the time from 1st January, 1841, to 7th February, the jury could find nothing for that period."

In answer to the fifth, sixth, and seventh instructions asked for by plaintiffs, the court further charged the jury, that if they believed, from the testimony, that the $ 1,731.39 were paid to Robert Allen before the 1st of July, 1841, and he was authorized by the Department, under instructions to the postmaster, to receive it ; and if they believed from the testimony that he received no money of the United States which he was not entitled to over and above the $ 1,731.39, the jury might allow a credit for it to the defendants, although the receipt is not in the form prescribed, and was not reported to the Department in conformity to the instructions, as it could work no wrong to the United States.

And the said plaintiffs, by their counsel, thereupon excepted to the opinion of the court in refusing to give the first, third, fifth, sixth, and seventh instructions, as asked for as aforesaid, and also excepted to the said charge so given by the said court to the said jury as aforesaid, and to each and every part and proposition thereof.

The court then directed the jury to state in their verdict what items and sums they should allow, and what they disallowed, in making up said verdict.

The jury then retired from the bar, and afterwards, on the same day, returned into court a verdict as follows. (The verdict has been given above.)

The United States sued out a writ of error, and brought the case up to this court.

It was argued by *Mr. Johnson* (Attorney-General), for the United States, no counsel appearing for the defendants in error.

*Mr. Johnson* made the following points : —
I. That the testimony of Allen, Keys, and Tomlins was improperly admitted, for the reasons set forth in the exceptions.

II. That the instruction given by the judge, "that the Post-Office Department had no right to calculate as they did, that, if three months produced a given sum, four months and seven days would produce so much; that it was proper for the jury to charge the defendants with double postage received during the quarter ending 30th of September, and this for the quarter ending 31st of December, 1840; and as the plaintiffs had furnished no return for finding a verdict for the time from 1st January, 1841, to 7th February, the jury could find nothing for that period," was erroneous. Because the postage to be doubled, instead of being limited only to the previous quarter, could have been ascertained within the meaning of the thirty-second section of the act of 1825, for the whole time claimed; — 1st. By the mode adopted by the auditor; 2d. By the average of the two previous quarters, or any other two quarters; 3d. By taking the last or any other quarter, and an average of the previous quarter for the number of days necessary.

It will be contended, that one of these modes is authorized by the law; because, if not, the law would be wholly inoperative in the case of a default for any period short of a whole quarter.

III. That the construction of the instructions of the Postmaster-General, made under the authority of the ninth section of the act of 1836, was matter of law, and that the court should therefore have granted the fifth, sixth, and seventh instructions prayed by the plaintiffs, and should not, in answer to the said prayers, have charged the jury that, on the facts stated in the charge hypothetically, they might allow a credit of $ 1,731.39.

Mr. Justice WAYNE delivered the opinion of the court.

There cannot be either security or efficiency in the business of the Post-Office Department, unless its receipts and disbursements are made upon a fixed plan. It must be executed, too, with uniformity and rigor. The duties of its officers must be definitely prescribed, and enforced without relaxation. Nor will there be either safety or justice for the country, if the forms enjoined for receiving and paying money are permitted to be disregarded by its deputies. The establishment under our system must be made to support itself.

It is extended from day to day into territories, late wildernesses, and from place to place in and beyond them, through prairies, swamps, and marshes, without any other trail than those of the first wheels that passed over them. In the settled parts of the country, new routes, changes of routes, increase of speed in conveyances, and new conveyances, are daily demand-

ed to meet the conveniences and the wants of our almost incalculable internal commerce. Neither the cost of them nor the revenue can be anticipated. Sleepless vigilance in its chief, sleepless devotion to its business, aided by the unremit-. ting·industry and intelligence of his assistants in the Department, can only meet their responsibility, as that is estimated by public expectation.

Such is the conviction of every one who has ever had any connection with the Department, or of any one who has looked into its operations as a point of liberal inquiry. ·Its deputies and agents in every branch of its business see and feel the necessity of conformity to the rules prescribing their separate duties. Postmasters in the most limited offices, and contractors for the smaller or larger routes, have found that their best security for the preservation of their relations to each other and to ·the Department is a strict compliance with its instructions. Several of them, acting in this spirit of subordination, have honorably connected themselves with the Department, in the estimation of the public.

Congress has legislated in such a spirit. From the beginning of its legislation to the act of March, 1825, reducing into one act all that had been previously passed, large duties were imposed upon the Postmaster-General, and there was given to him a large discretion.

If looked at in detail, it is almost remarkable that any one could be found to undertake them with the hope of discharging both acceptably. It has been done, however, and the country enjoys the benefit.

But it became necessary, from the enlargement of the business of the Department, to change its organization, and to provide a more effectual system for the settlement of its accounts. It was done by the act of 1836. By the ninth section of that act, the Postmaster-General is authorized to give instructions to postmasters for accounting and disbursing. The thirty-second section of the act of 1825 is, that if any postmaster shall neglect to render his account for one month after the time, and in the form and manner, prescribed by law, and by the Postmaster-General's instructions conformable therewith, he shall forfeit double the value of the postages which·shall have arisen at the same office in any equal portion of time, previous or subsequent thereto; or in case no account shall have been rendered at the time of the trial of such case, then such sum as the court and jury shall estimate as equivalent thereto.

In this case, Roberts was the postmaster; Adams and Reed were his securities. The Postmaster-General sent to the

former instructions how he was to account, and very precise directions for paying contractors. They were the same as are sent to all postmasters, except as to the contractor to whom money was to be paid. Blank forms of orders and receipts were annexed for every collection. The order in the instructions is, — "These forms, and no others, must be used in your payments to contractors." If the contractor called in person, no order was necessary. Two receipts, in that case, were to be kept in the form prescribed, one of which the postmaster was to keep, and the other is directed to be sent by the next mail to the Auditor for the Post-Office Department. Roberts was further instructed, that, if any other person calls for the money as the agent of the contractor, he must produce two orders in the prescribed form, signed by the contractor, with blank receipts annexed. After the agent was paid, both receipts were to be filled up and signed. Both were to be left with the postmaster, one of which was to be forthwith sent to the Auditor of the Department. He was told that these claims and orders could not be sold, negotiated, or transferred; that no credit would be allowed him for any payment to any other person than the contractor or the person named in his order, &c.; &c., nor unless the receipt be dated on the day when the money is paid. In his official bond, among others, — and it is the first of his covenants, — he binds himself to execute the duties of his office according to law and the instructions of the Postmaster-General, and faithfully once in three months, or oftener if required, to render accounts of his receipts and expenditures as postmaster to the Post-Office Department; that he shall faithfully account, in the manner directed by the Postmaster-General, for all moneys, bills, bonds, notes, receipts, and other vouchers, which he shall receive as agent for the Department.

Thus instructed, forewarned, and bound, we can scarcely account for Mr. Roberts's disregard of his corresponding obligation otherwise than that it was wilfully done. He failed to account for the time stated in the record, and he claims in this suit, as an offset against the demand of the United States, payments which he says were made to Allen, the contractor, contrary to his instructions, which the Department had not any knowledge of for two years after the date of his receipt from Allen, and for which amount Allen gave no credit when his accounts were finally settled at the Department. Such is the proof in the case. Upon the trial, when the evidence on both sides had been closed, the counsel for the United States asked that the jury might be instructed, if they believed the evidence in the case, that the defendant was liable for the amount which he

said had been paid·by him to Allen, and that the United States were entitled to double the amount of the postages which· had accrued and been returned as the amount from the 1st of July to the 30th of September, for the next quarter, ending ·on the last day of December, for which Roberts did not make a return; and at that rate for so much of the next quarter as the defendant remained in office, for which also he had failed to make a return.

In respect to the money said to have been paid to Allen, there is not a fact in the cause which can raise even a remote equity for its allowance. The facts are all the other way. There was a violation of official duty in making them, if such payments were ever really made for the purpose stated, unfairness in dealing, no credit having been given for the amount when Allen's account was settled at the Department, and a very wrong apprehension of right by the defendant, in his claiming to be paid to him a sum for which he had subjected the United States to a loss by an inexcusable disregard of his instructions as to the manner alone in which he was permitted to pay money to a contractor. As to the double charge for postage in the account rendered against him, we think the calculation and the time for which it is made was properly done by Mr. Whittlesey, the then Auditor of the Treasury for the Post-Office Department. For the entire quarter unaccounted for, there cannot be a doubt. There ought not to be any for the portion of the next quarter. His obligation to account for and to pay both cannot be denied. It is admitted it was his duty to return for an entire quarter, under the instructions of the Postmaster-General. It is equally plain that, under the thirty-second section of the act of 1825, if a postmaster shall neglect to render his account for one month after the time, and in the form and manner, prescribed by law, he becomes liable to a double charge, according to the manner stated in that section. Then the only question is, whether that obligation to make a return is not as binding upon a postmaster who leaves office between the beginning and end of a quarter, as it is upon one who shall leave office at the end of a quarter. Is he not bound to make a return within one month after the expiration of the quarter, though he has been in office only for a part of it? By the instructions of the Postmaster-General, he ought to have done so within two days after the expiration of his quarter. Now whether the instruction or the law applies to the obligation is not material. Under the law, and without the instruction, the liability is incurred. But if the case is put under the instruction alone, we think the fair interpretation of it is,

The United States *v.* Roberts et al.

that it comprehends any time less than a quarter, as well as an entire quarter. This construction may be made from its terms. The postmaster is required to have the balance due by him ready to be paid on demand at the end of each quarter. He is, by the instructions, to make a return of what that amount is two days after the expiration of the quarter. If he is not ready to pay, and neglects to make his return, and says he is not bound to do either because his office terminated before the expiration of a quarter, does he not disregard the instruction as to what he has received? If his neglect to render his accounts be omitted for one month after the time, and in the form and manner, prescribed by law, it cannot be said he has not subjected himself to the penalty of a double charge, to be proportioned by what may have been received at his office in any equal time previous or subsequent thereto. Nor can it be said, because no account was rendered in this instance, that there was no datum for such a calculation to be made, or that he was only liable to pay such an amount as a court and jury may find, upon other evidence, to be an equivalent to the penalty which he has incurred.

All of us think differently. The court below having refused to give to the jury the first, fifth, sixth, and seventh instructions which were asked by the counsel for the United States, the judgment is reversed, and the cause will be remanded for further proceedings, in compliance with the opinion now given.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Illinois, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo*, and for such further proceedings to be had therein as shall be in conformity to the opinion of this court; and as to law and justice shall appertain.